AOYAGI, J.
*56 Defendant was convicted of one count of burglary in the first degree, ORS 164.225, one count of coercion, ORS 163.275, and one count of assault in the fourth degree, ORS 163.160, all constituting domestic violence, in connection with an incident involving his ex-girlfriend. At trial, defendant moved for a judgment of acquittal on the burglary and coercion counts. The trial court denied the motion, and defendant assigns error to that ruling on appeal. We reject defendant's argument, as to both counts, for the reasons stated below. We also reject without written discussion defendant's three pro se assignments of error. Accordingly, we affirm.
We review the trial court's denial of a motion for judgment of acquittal to determine "whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. King , 307 Or. 332, 339, 768 P.2d 391 (1989) ; see also State v. Morgan , 361 Or. 47, 61, 388 P.3d 1085 (2017) (same). Here, applying that standard, the facts are as follows.
Defendant and the victim were in an intimate relationship for over a year. After they broke up, the victim obtained a restraining order, and defendant moved out of her apartment. A few weeks later, defendant and the victim spoke on the phone and exchanged text messages in which defendant stated that he did not have anywhere to stay and did not have any food or money. Around 9:00 or 10:00 p.m. that night, the victim sent a text message to defendant, saying, "Look, how about you-we not do this. I said it's too late." Defendant texted back, "Baby, I don't have anywhere to stay." The victim told him again that "it's too late." Nonetheless, around 1:00 a.m., defendant arrived at the victim's apartment and knocked loudly on her locked front door. The victim, who was still awake, opened the door and saw defendant. Leaving the screen door closed, she asked him what he was doing there. Defendant did not respond, but rather opened the screen door himself and walked into the apartment. The victim asked, "Well, are you just going to walk in?" She did not try to physically stop him *57 because, at that point, he "didn't seem like he was going to be aggressive."
Once in the apartment, defendant began drinking from an open wine bottle; the victim objected, but he ignored her. Thereafter, defendant and the victim were sitting on the couch talking when defendant took a "hard" therapeutic pillow and repeatedly hit the victim in the head. The victim testified that she did not know why defendant started hitting her with the pillow, other than he was "always just intimidating." The victim told defendant to stop and that she was going to call the police. She asked him to leave, but defendant *1019 refused, indicating that instead he would go to sleep.
Defendant went into the bedroom and started making the bed. In the bedroom, however, he found a pair of the victim's underwear. He "got a little aggressive" and accused her of being with someone else. When she denied it, he "got a little more aggressive" and suddenly came out of the bedroom toward her. He ripped off her shorts and underwear, grabbed her, and tried repeatedly to twist her around and bend her over the couch, as she cried and told him to stop. It was only when the victim asked defendant whether he was going to rape her that he stopped.
The victim, who was wearing only a t-shirt at that point, was "kind of like hyperventilating" and walked to the kitchen area to get some water. Defendant was "pretty irate." The victim told defendant that she was still going to call the police, to which defendant responded, "Well, bitch, your phone is broke" or "I got your phone." Defendant went back toward the couch and told the victim to sit down. According to the victim, she "[knew] to be quiet, because he's aggressive. And so [she] did that." Defendant then "did what he wanted to"-apparently some type of sexual conduct-which was "kind of consensual, because [she] didn't want him to do what he wanted to do by the couch."
Defendant eventually fell asleep, at which point the victim got off the couch and tiptoed to the bedroom to look for her phone. She found it, but, before she could do anything with it, defendant came into the bedroom. She hid *58 the phone. Defendant demanded that she tell him where the phone was, and, when she would not, proceeded to tear apart the room and assault her repeatedly. Defendant eventually got the phone away from her, at which point he ran out of the apartment. The whole incident had lasted about five hours.
The state charged defendant with multiple crimes, and the jury ultimately convicted him of one count each of burglary, coercion, and assault. Defendant's first assignment of error is that the trial court erred in not granting his motion for judgment of acquittal on the burglary count. Defendant's second assignment of error is that the trial court erred in not granting his motion for judgment of acquittal on the coercion count.
A person commits the crime of burglary in the first degree if he "enters or remains unlawfully in a building with intent to commit a crime therein," ORS 164.215, and that building is a dwelling, ORS 164.225. The indictment charged that defendant entered and remained in the victim's apartment with the intent to commit the crime of assault. At trial, as the basis for his motion for judgment of acquittal on the burglary count, defendant argued that the restraining order did not make it unlawful to enter the victim's apartment. The trial court denied the motion on the ground that, regardless of the restraining order, there was evidence that defendant had entered or remained in the apartment without the victim's permission. On appeal, defendant argues for the first time that he had implicit permission to enter the apartment. We agree with the state that that argument is unpreserved, and therefore we decline to address it. See State v. Wyatt , 331 Or. 335, 343, 15 P.3d 22 (2000) (declining to consider unpreserved issue); ORAP 5.45(1) (preservation requirement).
Defendant's second assignment of error pertains to the coercion count. As relevant here, a person commits the crime of coercion when he "compels or induces another person *** to abstain from engaging in conduct in which the other person has a legal right to engage by means of instilling a fear that, if the other person engages" in that conduct, he will "unlawfully cause physical injury" to a person. ORS 163.275 ; see also *59 State v. Pedersen , 242 Or.App. 305, 311, 255 P.3d 556, rev. den. , 351 Or. 254, 264 P.3d 1285 (2011) (stating same as elements).
Defendant asserts that there was insufficient evidence for the jury to convict him of coercion. In particular, he argues that the evidence was insufficient to establish that he intended to compel the victim to remain on the couch. We disagree. Viewing the evidence in the light most favorable to the state, we agree with the state that a rational trier of fact could find that, to prevent her from moving around the house or calling the police, *1020 defendant ordered the victim to sit on the couch and coerced her to stay there by causing her fear that he would physically injure her if she did not. Although defendant did not expressly threaten the victim with physical injury if she got off the couch, the jury is entitled to consider the totality of the circumstances. Defendant had shown up at the victim's apartment in the middle of the night, despite a restraining order and despite the victim repeatedly telling him not to come over; walked into her apartment without asking; repeatedly hit her in the head; refused to leave when she said she was going to call the police and told him to leave; assaulted her in a manner highly suggestive of intent to rape; called her a bitch and told her that he had her phone when she again said that she was going to call the police; and ordered her to sit on the couch. According to the victim, the reason she sat on the couch and stayed there was because of defendant's aggression.
From that evidence, a rational juror could find that defendant compelled the victim to stay on the couch against her will by instilling fear that he would physically assault her if she got off the couch. The circumstances are sufficient to establish an implicit threat of physical violence. Cf. State v. Phillips , 206 Or.App. 90, 96, 135 P.3d 461, rev. den. , 341 Or. 548, 145 P.3d 1109 (2006) (affirming denial of motion for judgment of acquittal on coercion where the defendant "implicitly threatened to injure" two victims by pushing one down onto a couch and grabbing the other by the arm). Indeed, that implicit threat came to fruition. When, believing that defendant was asleep, the victim eventually did get off the couch and tiptoe to the bedroom to try to find her phone, defendant immediately assaulted her again. The trial court did not err *60 in denying defendant's motion for judgment of acquittal on the coercion count.
Affirmed.