Submitted May 21; conviction on Count 1 reversed, conviction on Count 2 reversed and remanded, otherwise affirmed September 22, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEONTE AHMAD POWE,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CR32507; A172584

497 P3d 793

Defendant was convicted of coercion constituting domestic violence, ORS 163.275 (Count 1), and fourth-degree assault constituting domestic violence, ORS 163.160 (Count 2), after he allegedly pulled his ex-girlfriend H out of a car by her hair, dragged her a short distance, and punched her in the eye. The jury returned a unanimous verdict on the coercion count and a nonunanimous verdict on the assault count. On appeal, defendant challenges both convictions on Sixth Amendment grounds, relying on *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). He also assigns error to the trial court's denial of his motion for judgment of acquittal on the coercion count. *Held*: The assault conviction must be reversed under *Ramos*, because it is based on a nonunanimous verdict. As for the coercion count, the trial court erred in denying defendant's motion for judgment of acquittal. The evidence was legally insufficient to establish the elements of the offense of coercion, as there was no evidence that defendant—who was indicted on a coercion-to-act theory—used fear as a means to compel or induce the victim to do anything herself. Instead, the only evidence was that defendant used physical force to move H's body against her will.

Conviction on Count 1 reversed; conviction on Count 2 reversed and remanded; otherwise affirmed.

Leslie G. Bottomly, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Conviction on Count 1 reversed; conviction on Count 2 reversed and remanded; otherwise affirmed.

**AOYAGI, J.**

Defendant was convicted of coercion constituting domestic violence, ORS 163.275 (Count 1), and fourth-degree assault constituting domestic violence, ORS 163.160 (Count 2). He was acquitted of interference with making a report, ORS 165.572 (Count 3). On appeal, defendant contends that the trial court erred in denying his motion for judgment of acquittal (MJOA) on the coercion charge. He also challenges both of his convictions on Sixth Amendment grounds. We conclude that the trial court erred in denying defendant's MJOA and, accordingly, reverse the coercion conviction. As for the assault conviction, we reverse and remand, because the conviction was based on a nonunanimous verdict in violation of the Sixth Amendment.

## SIXTH AMENDMENT

Defendant asserts that the trial court violated the Sixth Amendment by instructing the jury that it could find him guilty by nonunanimous verdict and then by accepting the jury's verdicts. The jury was polled, establishing that defendant was found guilty of assault by nonunanimous verdict (10-2) and guilty of coercion by unanimous verdict (12-0). Under *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), the trial court erred in convicting defendant of assault based on a nonunanimous verdict, the state concedes the error, and we reverse and remand that conviction. We reject defendant's Sixth Amendment argument as to the coercion conviction, however, for the reasons stated in *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020), and *State v. Kincheloe*, 367 Or 335, 339, 478 P3d 507 (2020), *cert den*, ___ US ___, 141 S Ct 2837, 210 L Ed 2d 951 (2021).

## MJOA - COERCION

Defendant asserts that the trial court erred in denying his motion for judgment of acquittal on the coercion charge, because the evidence was insufficient as a matter of law to convict him of that crime. We review the denial of a motion for judgment of acquittal to determine whether, viewing the facts and all reasonable inferences

that may be drawn therefrom in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Wakefield*, 292 Or App 694, 695, 425 P3d 491 (2018). We state the facts in accordance with that standard.

Defendant and H had previously dated and were "still talking." One evening, they met at a bar, and, at the end of the night, defendant agreed to give H a ride home. They argued during the car ride. Upon arriving outside H's home, defendant told H to get out of the car. As H gathered her belongings, defendant "got mad" and told her that it was taking too long. H responded that she would not get out of the car until she had her shoes on (which she had removed during the ride) and her belongings. Defendant got out of the car, walked to the passenger side, and opened the door. He grabbed H by the hair, dragging her out of the car and down the sidewalk for a distance of about a car length. Defendant threw H's belongings onto the ground and gave H her dog, who had been in the hatchback area with defendant's dog. Believing defendant had driven away, H called 9-1-1. Within 30 seconds into the call, defendant reappeared, took the phone from H's hand, and smashed it to the ground. Defendant punched H hard in the eye, causing an orbital fracture, and then drove away.

H passed out for a few seconds. When she came to, defendant was gone, and she called out for help as she lay on the sidewalk. A passing bicyclist stopped to help her. H was in pain and needed assistance to get up. An ambulance transported H to the hospital. She had scratches, bruises, and abrasions, and she required surgery for her orbital fracture.

Defendant was indicted on charges of coercion, fourth-degree assault, and interference. As to coercion, the indictment charged that defendant "did unlawfully and knowingly compel and induce [H] to engage in conduct from which [H] had a legal right to abstain, by means of instilling in [H] fear that if [H] refrained from the conduct compelled and induced, defendant would unlawfully cause physical injury to [H]."

At trial, upon defendant's request, the trial court required the state to make an election on the coercion count, *i.e.*, to specify the conduct that defendant had allegedly compelled H to engage in by instilling fear that he would physically injure her if she refrained from it. The state elected H's being pulled out of the car and dragged down the street. Specifically, the state told the court that defendant had compelled and induced H

> "through the act of pulling her out of a car and dragging her down the street. She had a legal right to abstain from either of those acts, and she was in one act pulled out of the car and dragged down the street, and he instilled a fear that if she didn't do that, that he would be violent towards her. He instilled that fear by actually being violent towards her."

Soon thereafter, defendant moved for a judgment of acquittal, arguing that the evidence was insufficient as a matter of law to establish coercion. The state opposed the motion, reiterating its position that defendant had coerced H to be dragged down the sidewalk by dragging her down the sidewalk:

> "She says, 'Wait a minute, I'm trying to get my belongings. I'm trying to get my shoes, I'm trying to get my purse.' She was not ready to leave that car, and she made that clear to Mr. Powe. He then acted, by pulling her out of that car. I asked her, 'Did you want to go down that sidewalk?' She said, 'No.' She was engaged in moving down that sidewalk as a result of his behavior, as a result of his act. She went approximately a car length down the sidewalk being dragged by her hair. This is something that she was compelled to do, she had no other choice but to do this, because of his act."

The trial court denied the MJOA, stating without elaboration that the evidence was sufficient to go to the jury. The jury subsequently found defendant guilty of coercion.

ORS 163.275(1) defines the crime of coercion as follows:

> "A person commits the crime of coercion when the person compels or induces another person to engage in conduct from which the other person has a legal right to abstain,

or to abstain from engaging in conduct in which the other person has a legal right to engage, by means of instilling in the other person a fear that, if the other person refrains from the conduct compelled or induced or engages in conduct contrary to the compulsion or inducement, the actor or another will:

"(a)  Unlawfully cause physical injury to some person;

"(b)  Unlawfully cause physical injury to some animal;

"(c)  Unlawfully cause damage to property;

"(d)  Engage in conduct constituting a crime;

"(e)  Falsely accuse some person of a crime or cause criminal charges to be instituted against the person;

"(f)  Cause or continue a strike, boycott or other collective action injurious to some person's business, except that such a threat is not deemed coercive when the act or omission compelled is for the benefit of the group in whose interest the actor purports to act;

"(g)  Testify falsely or provide false information or withhold testimony or information with respect to another's legal claim or defense; or

"(h)  Unlawfully use or abuse the person's position as a public servant by performing some act within or related to official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely."

Thus, coercion requires a person to use fear of a particular consequence as a means to "*influence* or *persuade* a victim to alter his or her course of conduct—to do something that the victim otherwise would not have done or to not do something which the victim otherwise would have done." *State v. Pedersen*, 242 Or App 305, 312, 255 P3d 556, *rev den*, 351 Or 254 (2011) (emphases added). As the Supreme Court said about a prior version of the coercion statute, "[t]he target of the law is the effective use of fear to induce compliance with a demand." *State v. Robertson*, 293 Or 402, 418, 649 P2d 569 (1982).

In *State v. Phillips*, 206 Or App 90, 96-97, 135 P3d 461, *rev den*, 341 Or 548 (2006), we affirmed the denial of motions for judgment of acquittal on two coercion charges

where there was evidence that two child victims complied with the defendant's demands to stay at his apartment because he had instilled in them a fear that he would physically injure them if they did not comply. Similarly, in *State v. McNair*, 290 Or App 55, 59, 413 P3d 1017, *rev den*, 362 Or 860 (2018), the evidence was sufficient for a coercion charge to go to the jury where the defendant ordered the victim to sit on a couch, and she did so, under circumstances that permitted a nonspeculative finding that she sat on the couch against her will due to the defendant's implicit threat of physical violence if she failed to comply.

By contrast, in *Pedersen*, 242 Or App at 313, the evidence was legally insufficient to prove coercion, where there was no evidence that the victim (a police officer) intended to write a ticket to the defendant but "was induced [not to do so] by a fear that, if he did write a ticket, defendant would physically injure him." And, in *State v. Hendricks*, the defendant could not be convicted of coercion for assaulting the victim, E, as she tried to walk into her living room, because the evidence was "legally insufficient to establish that E abstained from doing anything, much less that she did so as a result of fear induced by an express or implied threat of physical injury." 273 Or App 1, 19, 359 P3d 294 (2015), *rev den*, 358 Or 794 (2016). "To be sure, as a purely *physical* matter, defendant's assaultive conduct obstructed and delayed E's movement, but nothing in the record, including E's testimony, suggests that, in any event, she acted as a result of 'fear-induced compliance.'" *Id.* (emphasis in original; quoting *Pedersen*, 242 Or App at 313).

In this case, defendant was indicted on a coercion-to-act theory. He was accused of coercing H "to engage in conduct from which [H] had a legal right to abstain," specifically by "instilling in [H] fear that if [H] refrained from the conduct compelled and induced, defendant would unlawfully cause physical injury to [H]." *See Hendricks*, 273 Or App at 16-17 (recognizing coercion-to-act and coercion-to-abstain as "two circumstantially distinct alternative variants of coercion" under ORS 163.275(1)). The state therefore had to prove "three distinct elements": (1) that defendant compelled H to do something; (2) that H had a right not to do; (3) by making H afraid that if she did not do it, one of the

statutorily enumerated consequences would result. *Phillips*, 206 Or App at 95. At trial, the state elected the conduct on which it sought conviction as defendant having compelled or induced H *to be dragged out of the car and down the sidewalk*. To prove that theory, the state put on evidence that H had wanted to stay in the car long enough to gather her things, but that defendant wanted her out immediately and dragged her out of the car and down the sidewalk when she refused to get out immediately.[1]

That theory of coercion is legally untenable. There is no evidence that defendant used fear as a means to compel or induce *H* to do anything. H did not drag herself down the sidewalk—defendant dragged her. That was his conduct, not hers. Defendant used *physical force* to move H's body against her will, which may be assault, but there is no evidence that *H* moved her own body out of fear that defendant would otherwise assault her, which would be coercion. As defendant puts it, H "did not remove herself from the car or move down the street of her own accord, motivated by fear from defendant's words or actions," but, rather, "was dragged by the hair by defendant the entirety of the distance that she was moved."

For the first time on appeal, the state suggests that a jury could find that defendant coerced H to "comply" with being pulled out of the car and dragged. That argument seems to suggest that defendant coerced H to *abstain* from conduct—fighting back—which is problematic, as that is not how this case was indicted or tried. *See Hendricks*, 273 Or App at 17 (a jury may consider only the variant of coercion on which it is instructed—either coercion-to-act or coercion-to-abstain—and our review of the sufficiency of the evidence is similarly "circumscribed"); *see also Hill v. Mayers*, 104 Or App 629, 632, 802 P2d 694 (1990), *rev den*, 311 Or 187 (1991) ("[W]hen a case has been heard on a particular theory in the trial court, on appeal the parties are restricted to the theory on which the case was tried."). In any event, the state has identified no evidence that H "complied" with being pulled out of the car and dragged, and our own review of

---

[1] We assume without deciding that H had a legal right to stay in defendant's car long enough to gather her belongings.

the record reveals none. Indeed, there is no evidence at all as to how H behaved in the short time that defendant was dragging her—such as whether she fought back (or not) or yelled (or not)—let alone evidence that H altered her behavior in any way due to fear instilled by defendant about the consequences if she reacted as she wanted.

Accordingly, we agree with defendant that the trial court erred in denying his motion for judgment of acquittal. Although the state put on evidence to prove its elected theory of coercion, the theory itself was legally untenable, such that no rational juror could find the essential elements of coercion to have been proved.

Conviction on Count 1 reversed; conviction on Count 2 reversed and remanded; otherwise affirmed.